UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAMON VILLALOBOS,<br><br>   Plaintiff,<br><br>   v.<br><br>TOM BOSENKO, et al.,<br><br>   Defendants. | No. 2:13-cv-00109 DB P<br><br><br>ORDER |

Plaintiff is a state prisoner proceeding pro se and in forma papueris in this civil rights action pursuant to 42 U.S.C. § 1983. This matter proceeds on plaintiff's May 5, 2014, first amended complaint against defendants Shasta County Sheriff Tom Bosenko and Shasta County Jail Chaplain Mark Harmon for violating plaintiff's First and Eighth Amendments rights. All parties have consented to the jurisdiction of a magistrate judge for all purposes. (ECF Nos. 4, 20.)

Pending is defendants' motion for summary judgment. (ECF No. 26.) Plaintiff has filed an opposition, and defendants have filed a reply. (ECF Nos. 32, 33.) This matter is fully briefed and ready for disposition.

**I.    Plaintiff's Allegations**

Plaintiff is a practicing Buddhist. While housed at the Shasta County Jail in Redding, California, plaintiff was refused a vegetarian diet by defendants Harmon and Bosenko despite their knowledge of plaintiff's religious dietary needs. As a result, plaintiff has suffered weight

1

loss and bouts of illness.

**II.       Legal Standards**

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Under summary judgment practice, "[t]he moving party initially bears the burden of proving the absence of a genuine issue of material fact." In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admission, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that the adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also Fed. R. Civ. P. 56(c)(1)(B). Indeed, summary judgment should be entered, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323. Summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment . . . is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or

1  admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P.

2  56(c)(1); Matsushita, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the fact in

3  contention is material, i.e., a fact "that might affect the outcome of the suit under the governing

4  law," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific

5  Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e.,

6  "the evidence is such that a reasonable jury could return a verdict for the nonmoving party,"

7  Anderson, 447 U.S. at 248.

8  In the endeavor to establish the existence of a factual dispute, the opposing party need not

9  establish a material issue of fact conclusively in its favor.  It is sufficient that "'the claimed

10 factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the

11 truth at trial.'" T.W. Elec. Serv., 809 F.2d at 630 (quoting First Nat'l Bank v. Cities Serv. Co.,

12 391 U.S. 253, 288-89 (1968).  Thus, the "purpose of summary judgment is to pierce the pleadings

13 and to assess the proof in order to see whether there is a genuine need for trial." Matsushita, 475

14 U.S. at 587 (citation and internal quotation marks omitted).

15 "In evaluating the evidence to determine whether there is a genuine issue of fact, [the

16 court] draw[s] all inferences supported by the evidence in favor of the non-moving party." Walls

17 v. Central Contra Costa Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011) (citation omitted).  It is

18 the opposing party's obligation to produce a factual predicate from which the inference may be

19 drawn. Richards v. Nielsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to

20 demonstrate a genuine issue, the opposing party "must do more than simply show that there is

21 some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586 (citations

22 omitted).  "Where the record taken as a whole could not lead a rational trier of fact to find for the

23 non-moving party, there is no 'genuine issue for trial.'" Id. at 587 (quoting First Nat'l Bank, 391

24 U.S. at 289).

25 **III.    Undisputed Facts**

26 At all times relevant to this action, plaintiff was an inmate housed at the Shasta County

27 Jail (the "Jail"). Defs. Statement of Undisputed Facts ("DSUF") ¶ 1. His period of incarceration

28 there ran from July 7, 2012, through December 26, 2012. DSUF ¶¶ 2, 24. Defendant Tom

3

Bosenko served at the Shasta County Sheriff. DSUF ¶ 7.  Defendant Mike Harmon serves as the volunteer chaplain at the Shasta County Jail. DSUF ¶ 9.

In 2012, the Jail could provide the following meal options: regular, lacto-ovo vegetarian, lactose intolerant, and Kosher. DSUF ¶ 18. The lacto-ovo vegetarian meal is a vegetarian meal that comes with regular milk and other dairy products, such as egg or cheese. Id. There is no other vegetarian-type meal available. Id. The lactose-intolerant diet is a regular meal with soymilk instead of regular milk. Id. An inmate requesting a lactose intolerant meal must submit a medical request since it is reserved for inmates with digestive problems; it is not provided to inmates at their own request. DSUF ¶ 19.

On November 26, 2012, plaintiff submitted a request for religious literature related to Buddhism and for a religious diet. DSUF ¶¶ 2, 30. In response to plaintiff's request for religious literature, Chaplain Harmon informed plaintiff in writing that the prison library did not contain religious text for Buddhism similar to a Bible for Christians or a Quran for Muslims. DSUF ¶ 30. Chaplain Harmon did, however, locate some literature on Buddhism on the internet that he then gave to plaintiff. Id.

At the time that plaintiff submitted his request for a religious diet, such requests were directed to a chaplain at the Jail who would then interview the inmate to evaluate whether the inmate was sincere in his request for a religious diet. DSUF ¶ 4. Sheriff Bosenko approved this policy because he believed it was consistent with the laws of the United States and with Title 15 of the California Administrative Code pertaining to jail operations and meal service. Id. The policy was implemented because special diets are more costly for the Jail and because they can create friction between inmates as well as between inmates and jail staff, leading to a decrease in the efficiency of the Jail and an increase in the cost of jail operations. Id. ¶ 5. Additionally, some inmates will submit special diet requests, including religious diet requests, in order to cause trouble for jail staff, in order to create friction with the jail staff or between inmates and for the purpose of exercising power over fail staff to require staff to comply with their demands. Decl. of Tom Bosenko in Supp. of Defs.' Mot. Summ. J. (ECF No. 28) at ¶ 6.

In 2012, the Jail provided an average of 900 meals per day to inmates. Decl. of Dave

Sokol in Supp. Defs.' Mot. Summ. J. (ECF No. 29) ¶ 5. To ensure efficiency and cost-effectiveness, the Jail purchases the food and prepares the meals in bulk. Id. The more special or different diets the Jail has to provide, the more expensive it is for the Jail to purchase food and the more time it takes to prepare the food. Id. ¶ 7.

In compliance with the aforementioned policy, Chaplain Harmon interviewed plaintiff on November 27, 2012. DSUF ¶ 10. Chaplain Harmon asked plaintiff certain questions regarding the basic tenets of the Buddhist religion, but plaintiff was not able to correctly answer the questions. Id. Based on these responses, Chaplain Harmon determined that plaintiff was not sincere about his professed religious belief in Buddhism or about his request for a religious diet. DSUF ¶ 11. He therefore filled out a form recommending denial of plaintiff's religious diet request. Id. Though Chaplain Harmon recommended the denial, he did not have the authority to actually grant or deny the request; this was done by a jail officer. DSUF ¶ 11.

Following plaintiff's appeal, Chaplain Harmon re-assessed (though did not re-interview) plaintiff's religious request on December 18, 2012. DSUF ¶ 12. Chaplain Harmon determined that plaintiff may not have been able to answer the questions regarding the basic tenets of Buddhism because he was a new convert and therefore may not have been able to study enough about Buddhism to answer the questions. DSUF ¶ 12. Chaplain Harmon therefore recommended that plaintiff's request for a religious diet be granted and he be provided a lacto-ovo vegetarian diet. DSUF ¶ 12; Pl.'s Dep. Ex. C. On that same date, the recommendation was approved. Decl. of Mike Harmon in Supp. of Defs.' Mot. Summ. J. (ECF No. 30) ¶ 8.

Notwithstanding Chaplain Harmon's recommendation for a lactose intolerant diet, plaintiff began receiving a vegetarian diet. See DSUF ¶ 14. Thereafter, plaintiff submitted multiple requests to combine the vegetarian diet with the dairy-substitutes from a lactose intolerant diet for the nutritional benefits. DSUF ¶ 15; Pl.'s Dep. at 40:22—41:4. He also sought extra bread and/or vegetables. DSUF ¶ 16. These diet-modification requests were denied because there is no meal option at the Jail that includes a combination of vegetarian food, soy milk, and extra bread or vegetables. DSUF ¶ 19. Additionally, plaintiff did not have medical clearance for a lactose intolerant diet. DSUF ¶ 20.

5

Plaintiff received three meals a day at the Jail. DSUF ¶ 23. He was also provided water with his meals. Pl.'s Dep. (ECF No. 27-1) at 37:11-15. Plaintiff ate those portions of his meals that he could, including the bread and vegetables, and left the cheese and the milk aside. Pl.'s Dep. at 53:14-18. Though plaintiff claims he lost weight and suffered other health effects as a result of the defendants' failure to provide him with a nutritionally-adequate religious diet, he submits no medical evidence in support. He admits that he did not seek any medical attention for any reason relating to his meal service. Pl.'s Dep. at 69.

Plaintiff was transferred to another institution on December 26, 2012. DSUF ¶ 24.

Effective April 2013, the Jail adopted a new policy regarding religious diet requests. DSUF ¶ 27. Under this new policy, each inmate is granted a one-time request for a religious diet during a given incarceration, so long as the diet complied with Title 15 nutritional requirements, without prior determination by Jail staff of the sincerity of the inmate's religious beliefs. DSUF ¶ 27. This new policy came about because Sheriff Bosenko learned of a similar policy change by the California Department of Corrections and Rehabiliation ("CDCR"). DSUF ¶ 27.

Sheriff Bosenko was not involved in the day-to-day operations of the jail and did not have any direct involvement regarding the plaintiff. DSUF ¶ 8. He was unaware of plaintiff or his request for a religious diet prior to the initiation of this lawsuit. Id. While plaintiff contends that he mailed requests to Sheriff Bosenko, he concedes that these letters were not delivered. Pl.'s Resp. to DSUF ¶ 8.

**IV.  Discussion**

    **A.  First Amendment**

Plaintiff asserts his First Amendment rights were violated when he was initially denied a religious diet and then when he was denied a special religious diet that was composed of various elements of the existing diet options at the Jail. Defendants move for summary judgment on the ground that the initial denial was based on legitimate institutional interests and his special modified dietary could not be fully accommodated because of costs associated with food and additional supervisory personnel. Plaintiff argues that these factors should not have been considered when seeking to comply with an inmate's religious beliefs.

The protection of the Free Exercise Clause of the First Amendment is triggered when prison officials infringe upon the practice of an inmate's religion by preventing him from engaging in conduct which he sincerely believes is consistent with his faith. Shakur v. Schriro, 514 F.3d 878, 884-85 (9th Cir. 2008). The court is not concerned with whether the practice at issue (in this instance, vegetarianism) is central to a plaintiff's faith in the general sense. Rather the focus is on whether plaintiff sincerely believes the practice at issue is consistent with his faith. Id. The undersigned will assume, for the purposes of this motion, the sincerity of plaintiff's beliefs.

In McElyea v. Babbitt, 833 F.2d 196, 198 (9th Cir. 1987), the Ninth Circuit held that "[i]nmates ... have the right to be provided with food sufficient to sustain them in good health that satisfies the dietary laws of their religion." However, an inmate's rights arising under the First Amendment are necessarily limited by incarceration and may be curtailed by prison officials in the furtherance of legitimate correctional goals. O'Lone v. Shabazz, 482 U.S. 342, 348 (1987). In order to establish a violation of the Free Exercise Clause, a prisoner must show that a prison official burdened the practice of his religion without any justification reasonably related to legitimate penological interests. Shakur, 514 F.3d at 883-84.

The following factors should be considered when determining whether a regulation or practice which impinges on a prisoner's exercise of his religion is reasonable: 1) whether there is a valid rational connection between the regulation or practice and the legitimate governmental interest put forward to justify it; 2) whether there are alternative means for exercising the right in question; 3) the impact accommodation of the exercise at issue would have on prison personnel and resources; and 4) whether the regulation or practice is unreasonable because there are obvious, non-obtrusive alternatives available. Turner v. Safley, 482 U.S. 78, 89-90 (1987).

As to the first Turner factor, courts have long held that a prison has a legitimate interest in limiting special religious dietary options and thereby save money. See Ward v. Walsh, 1 F.3d 873, 877 (9th Cir. 1993); Dean v. Corr. Corp. of America, 108 F. Supp. 3d 702, 717 (D. Ariz. Feb. 20 2014); Curry v. Cal. Dep't of Corr., 2013 WL 75769, at *13 (N.D. Cal. Jan. 4, 2013) ("The orderly administration of a program that allows ... prisons to accommodate the religious

7

1  dietary needs of thousands of prisoners" is a legitimate governmental interest.) Defendants have
2  submitted evidence that the limitation of meal options was necessary to reduce costs, and that a
3  brief assessment of a plaintiff's religious sincerity is necessary to prevent, inter alia, inmates from
4  submitting such requests on a whim and to the detriment of prison administration. This factor
5  weighs in favor of defendants. See, e.g., King v. Bosenko, 2:12-cv-2940-CKD, 2014 WL
6  3421001, at *7 (E.D. Cal. July 14, 2014) ("[I] t was entirely appropriate for defendant Kent to
7  undertake at least some minimal inquiry as to whether plaintiff really is a Buddhist and really
8  does require a vegetarian diet before providing one.")

9  The second Turner factor is whether plaintiff had other means of religious expression. The
10 denial of the dairy-free vegetarian diet that plaintiff sought did not deprive him of all means of
11 exercising his religion. For example, he was able to study religious literature provided to him by
12 Chaplain Harlon. Moreover, relevant to the second Turner factor is whether the prison policy
13 requires the prisoner to do something forbidden by his religion rather than be unable to do
14 something that is a positive expression of his belief. See Ward, 1 F.3d at 878. On this, there is no
15 evidence that plaintiff was required to eat the dairy products included in his vegetarian diet.
16 Instead, plaintiff concedes that he drank water instead of milk, and he put aside those portions of
17 his meals that he could not eat.

18 As to the third factor—the impact of accommodating plaintiff's request on guards and
19 other inmates and on the allocation of prison resources generally—the evidence shows that
20 accommodating the diet request would adversely affect kitchen staff and security because it
21 would divert supervisory personnel for the purpose of shopping for and delivering plaintiff's
22 special foods. In addition, there would necessarily be some individualized preparation of
23 plaintiff's meals in a system that prepares food in bulk and approximately 900 meals per day.
24 This factor weighs in favor of defendants.

25 Other than proposing that his religious diet should have been accommodated in full,
26 plaintiff has not offered any "ready alternatives"—the fourth factor—to accommodate his First
27 Amendment rights at a de minimis cost to prison resources. This factor thus also weighs in favor
28 of defendants.

Considering the four Turner factors, the court finds that defendants' religious diet policy regarding the provision of dairy-free vegetarian meals is reasonably related to legitimate penological goals and there is therefore no First Amendment violation.

**B.     Eighth Amendment**

The Eighth Amendment of the United States Constitution entitles prisoners to medical care, and a prison official violates the Amendment when he acts with deliberate indifference to an inmate's serious medical needs. Estelle v. Gamble, 429 U.S. 97, 104 (1976); Peralta v. Dillard, 744 F.3d 1076, 1081 (9th Cir. 2014); Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012); Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006). "A medical need is serious if failure to treat it will result in significant injury or the unnecessary and wanton infliction of pain." Peralta, 744 F.3d at 1081 (citing Jett, 439 F.3d at 1096).

A prison official shows deliberate indifference to such a need if he "knows of and disregards an excessive risk to inmate health." Peralta, 744 F.3d at 1082 (citing Farmer v. Brennan, 511 U.S. 825, 837 (1994)). This "requires more than ordinary lack of due care." Colwell, 763 F.3d at 1066 (citing Farmer, 511 U.S. at 835). Instead, the prison official must "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Colwell, 763 F.3d at 1066. Prison officials may demonstrate deliberate indifference when they "deny, delay, or intentionally interfere with medical treatment," and prison doctors can be deliberately indifferent in their provision of care. Id.

For an inmate's complaints about his diet to rise to the level of a constitutional deprivation, he must show that the food he received was not adequate to maintain his health, e.g., by alleging facts indicating he lost weight or incurred health problems. See Foster v. Runnels, 554 F.3d 807, 813 n.2 (9th Cir. 2009); LeMaire v. Maass, 12 F.3d 1444, 1456 (9th Cir. 1993); Stewart v. Block, 938 F. Supp. 582, 588 (C.D. Cal. 1996). In addition, the inmate must show that the responsible prison officials had a "sufficiently culpable state of mind," and were deliberately indifferent to the inmate's health and safety. Farmer, 511 U.S. at 834.

Summary judgment must be entered for defendants on plaintiff's Eighth Amendment

claim for two reasons. First, he has submitted no evidence to suggest, let alone establish, deliberate indifference. Instead, the evidence establishes that less than three weeks after plaintiff's initial request for a religious diet was denied, Chaplain Harmon reconsidered and reversed himself, determining that plaintiff should be provided a religious diet. When plaintiff did begin receiving a modified diet, his requests to combine elements of the various diets offered at the Jail were denied for legitimate administrative reasons, including the fact that he was not medically approved for a lactose-intolerant diet. There is no deliberate indifference on these facts. Additionally, plaintiff submits no evidence that the diet that he did receive was inadequate to maintain his health or that he suffered any harm as a result.

In light of the conclusion that defendants are entitled to summary judgment on the merits of plaintiff's claims, the undersigned declines to consider defendants' alternative arguments based on failure to exhaust administrative remedies and entitlement to qualified immunity.

## V.   Conclusion

Based on the foregoing, IT IS HEREBY ORDERED that defendants' motion for summary judgment (ECF No. 26) is GRANTED, and this action is dismissed.

Dated: December 20, 2016

_____
DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

/DLB7;
DB/Inbox/Substantive/vill0109.msj